PEGGY SMITH *vs.* GEORGIANA MORSE.

Hampden.    December 1, 1943. — December 28, 1943.

Present: FIELD, C.J., DONAHUE, DOLAN, & RONAN, JJ.

*Landlord and Tenant,* Common hallway, Landlord's liability to tenant or his family or his invitee. *Negligence,* One owning or controlling real estate.

The mere facts that a matting at the edge of a step in a common passageway of a lodging house had been there for several years before a lodger sustained an injury in a fall when she caught her heel in a worn place six inches square, and that two years later the proprietor of the house removed that portion of the matting, did not warrant a finding either that the proprietor knew or should have known of the defect in the matting before the injury to the lodger, or that he was negligent in not remedying the defect.

TORT. Writ in the Superior Court dated November 29, 1939.

The case was tried before *Dillon,* J.

*J. S. Kane,* for the defendant, submitted a brief.

No argument nor brief for the plaintiff.

DOLAN, J. This is an action of tort to recover compensation for personal injuries alleged to have been sustained by reason of negligence on the part of the defendant. The case was tried to a jury, and at the close of the evidence the defendant moved for a directed verdict in her favor. The motion was denied and the defendant excepted. The jury returned a verdict for the plaintiff. The defendant filed a motion for a new trial, which the judge denied, and the defendant excepted to its denial.

The evidence in its aspect most favorable to the plaintiff discloses the following facts: On June 24, 1939, the plaintiff "was a roomer in the rooming house . . . owned and con-

trolled by the defendant." The plaintiff had lived on the first floor of the premises for more than a year previous to the date just mentioned. The hallway on that floor was about seven or eight feet wide, and its floor was covered with a strip of cork or rubber matting "about one-half inch thick which was cemented to the wooden floor . . . there was a stairway containing five or six steps leading from the hallway down to the street level, where a glass door opened into the street." The "matting stopped at the edge of the top stair." At that place it was "chewed like, clear off. It was slit, raggedy all around there. . . . The worn place was about six inches by six inches." "The light was back in the hall and it was sort of dark there by the steps." About eighty-five roomers used the hallway in question every day. On the morning of June 24, 1939, as the plaintiff started to descend the stairway leading to the street, she caught her toe "in the worn area" and fell down the stairway, sustaining the injuries complained of. She did not see the worn part of the matting before she fell and had never noticed it before, although she had lived in the premises for over a year prior to the accident and had walked back and forth over the stairway and the hallway, including the area where she fell, several times every day during that period. The "matting had been there several years prior to the plaintiff's injury." There was evidence that a strip of the matting "extending its entire width leading from the edge of the top stair inward about eighteen inches, and which covered the upper part of the staircase which was constructed of stone, was removed by the defendant's agent about three weeks before the trial."

The general rule relative to the liability of a landlord to a tenant for defects in a common passageway is well settled. "The landlord owes a duty, not to keep the common passageway in as good a condition as that in which it was or appeared to be at the time of the letting, but rather to use reasonable care to do so." *Sneckner* v. *Feingold*, 314 Mass. 613, 614, and cases there collected.

While the evidence would warrant a finding that the matting was defective at the time of the accident, we are

of opinion that the evidence would not warrant the jury in finding that the defendant knew, or in the exercise of reasonable care ought to have known, that the condition of the matting where the plaintiff fell required that it be remedied. There was no evidence that anyone had observed the condition of which the plaintiff complains prior to the accident. The plaintiff herself testified that, although she had walked back and forth over the hallway and stairway, including the area where she fell, several times a day for over a year during which she was a tenant in the premises, she did not notice the "worn . . . part of the matting" where she fell and that she did not see the worn part of the matting "before she fell." There was no evidence more favorable to the plaintiff in this respect than her own testimony. The fact that the matting in question had been used for several years would not of itself warrant a finding that the defect had existed so long that the defendant knew or ought to have known of it. That a portion of the matting, located where the plaintiff fell, was removed about three weeks before the trial would not warrant such an inference. The present case was tried in the court below on February 6 and February 7, 1942. The accident occurred on June 24, 1939. It thus appears that the matting in question was removed more than two years after the accident happened. Manifestly that action by the defendant would not warrant a finding that over two years before she was negligent in not having discovered and remedied the defect. We are of opinion that the evidence would not warrant a finding that the condition complained of had existed so long that the defendant knew or ought to have known of it, and accordingly that the evidence did not warrant a finding that the defendant was negligent. *Foote* v. *Waltham Netoco Theatres, Inc.* 314 Mass. 674, 676, and cases cited. It follows that the defendant's motion for a directed verdict should have been allowed. It is unnecessary to consider her exception to the denial of her motion for a new trial.

*Exceptions sustained.*
*Judgment for the defendant.*